Good morning. May I please the court. Artem Amsaryan for the petitioner Mr. David Sarkisian and his family. The main issue in this case is the credibility of the petitioner and whether the harm he suffered rose to the level of persecution. Agency decided that the petitioner was not credible and there were two-fold arguments for that. Number one, that he made minor inconsistent statements as to the length of his detention and also he failed to provide corroborating evidence. I'm going to start with the evidence because in reality he did provide corroborating evidence, specifically a letter from a doctor listing all his injuries, a letter from his mother describing his injuries, and also the most important part of the corroborating evidence was testimony of his wife, who by the way was found credible by the court. So in the same opinion, immigration judge found petitioner Mr. David Sarkisian not credible witness, however did find his wife, his witness, to corroborate his statement to be a credible witness. So credible testimony... What do you do with the omission of Mr. Lieberman's name in his original affidavit? That is correct. The affidavit omitted Mr. Lieberman's name. That is correct. But the petitioner explained that he wasn't sure why he omitted it. He explained that he was afraid to put the Lieberman's name. And based on the background information, that politician was very powerful in Israel. So even though I don't know exactly why it was omitted, also if we look at the affidavit, affidavit itself is about six or seven pages. The part that was litigated is about two pages, and the actual incident is about one quarter of the page. So whoever prepared the affidavit, looks like the previous attorney prepared the affidavit, did not concentrate on specific facts of the persecution, but rather on general background conditions and the backstory of his immigration. Who filled out the affidavit? I believe his first attorney, who represented him all the way through. What if we do find him credible? What's your best case that he suffered past persecution? That's an excellent question. In fact, this- I'm glad you like the question. I'm sorry? I'm glad you like the question. Yes, absolutely, because I was thinking about it. In my opinion, it's the credibility and persecution. So specifically, if we look at this court's case law, and I'm just pulling it up as we speak, threats, credible threats of persecution in itself were found many, many times to be persecution, especially if it joined with the confrontation. In this specific instance, petitioner was kidnapped, kept for two days, was severely beaten, and then he was promised that he and his family will be killed. Specifically, he was told, we're going to take you outside of the city, and we're going to kill you and then blame it on Arabs. That in itself, the confrontation in itself, should qualify as a past persecution. In addition, we have severe beating, we have kidnapping, and keeping him detained for two days. So again, this court numerous times held that confrontational threats in person are enough. Here, he was confronted, he was threatened, he was kidnapped, and he was promised the entire family will be eliminated. Also, one of the key issues are whether the people who are threatening a person, whether they're able to carry out that threat. That would be the main inquiry. Well, in this specific instances, we have involvement of the businessman, Michael Chernoi, who by Israeli police, by their own statement, was engaged in the kidnapping, killing, assassinating people, and ordering murder for hire. So, clearly, we have evidence as a background. Where did that come from? A statement of the police? Well, there was a newspaper article provided, and I'll give you a specific page in the record, that specifically said that Israeli police had evidence of Michael Chernoi involved in kidnapping, assassinations, and other crimes. And I'll give you exactly, here it is. The page is? Administrative record 413, specifically says, it's an article from Harrods newspaper, harrods.com, specifically says, it was not until 2004 that the Interior Ministry informed Mr. Chernoi, lawyers, that it was considering stripping him of his citizenship, which had ostensibly been obtained by fraudulent means. And then, quotation mark, the Israel police have information to the effect that you are responsible for acts of murder, attempted murder, violence, and threats, which were committed at your orders, or were contracted by you. That's the newspaper article from Israel on page 413, in the middle of the page. So the group that kidnapped my client, the group who threatened my client, clearly had ability to carry out the threat, combined with the backing of a most powerful politician in Israel, perhaps. He was a minister of transportation. He was a special assistant minister, eventually ended up being a minister of foreign affairs. If we compare it to the United States system, it's a third guy to the throne, you know. After the persecution issue, what case most nearly supports your theory on persecution?  Threats to the family. Specifically, the case law, Mashiri, would be M-A-S-H-I-R-I-V, Ashcroft 383, F-3-1-1-1-2, 1122-1121. Threats of serious harm, particularly when combined with confrontation or other mistreatment, may constitute persecution. And also, another case law that says what matters is whether the group making the threat has the will or the ability to carry it out. That would be Kaiser v. Ashcroft. So that's the case law in this circuit. This court ruled on that. And in this case, we have threats, confrontation, and other mistreatment would be severe beatings and also the kidnapping. Now, as to the beatings, I would like to concentrate a little bit on the injuries. Doctor specifically said that there were bloodshed all over, bruises, and other injuries. Mother said he had swollen face, swollen eyes. Wife testified that the husband couldn't move. He was beaten so severely. The doctor said he needed medical attention even though there were no broken bones. Now, the petitioner himself testified he was scared to go to the doctor, so he decided to forego future medical treatment. But he did need a medical treatment. He was beaten so severely. Can you distinguish the GU case, the GU case? Yes. The judge specifically said it. Let me pull up his specific comment. I think GU's detention was more of an in-passing detention. Police picks him up, takes him, hits him a couple of times, releases him. Did not beat him to the point that his entire body was swollen and hurt. Also, the threats were more of a, based on the political opinion here, it was more by the people who engaged in the killings and kidnappings. Because of that, I believe the threat in this specific case rises to the level of persecution. Do you want to save your last two minutes? Yes, I would like to do that. Thank you very much. Good morning, counsel. Good morning. May it please the Court. This Court should deny the petition for review because petitioner has not shown both that the record compels reversal of the independent merits finding as well as the adverse credibility determination. It's a high bar for both and neither were met in this case. First, with regards to the merits determination, the Court's conversation this morning has focused on past persecution. Not only has the harm in this case not risen to the level of past persecution, but there's also no objective evidence of future persecution in Israel for this individual. Was that a basis for the BIA's decision? Yes. It's on page five of the record. The board says, we concur with the immigration judge that respondents did not establish a well-founded fear of future persecution in Israel. And then it talks about the record, the background evidence, as well as the respondent's testimony, the individual's testimony as to what may happen to that person in Israel should he return. When they did that, they didn't apply the presumption of past persecution. Correct, because the finding in the prior two paragraphs or one full long paragraph. So they didn't make a finding of what would happen if you applied the presumption? Correct, because there is no past persecution in this case. So then your case depends on past persecution, not the absence of future persecution. Correct. So I'm happy to start with past persecution. And in this case, it is just like GU in that. Which one? GUO or GU? The GU. In GU, the individual was detained and beaten once, just as in this case. The individual was detained and beaten. There was a short interrogation in this case. There's no testimony as to any length of interrogation, but the scant testimony did discuss a few questions and a very short period of interaction. Well, this went on two or three, almost three days. And in the GU case, it was two hours. And he didn't require any medical treatment. And although it's true in this case he didn't take medical treatment, there was significant testimony that he was really injured. Isn't that right? I disagree partially there. First, it's not clear exactly how long he was detained. It could be three days at most. At one point he said one day. So it is longer than a couple of hours in GU, but it is not clear that it was a full three days. The second part as to what exactly happened to him, if you look at record on page 800, that's the doctor's letter. And that discusses the extent of the injuries. And it discussed bruises and some abrasions. But the treatment that was prescribed was essentially ice and rest. And I'm not trying to minimize an injury that requires ice, but in the context of the severity of something that constitutes persecution. But you also have a threat to kill him or the family, assuming his testimony is not incredible. Assuming that his testimony is not incredible, there were vague statements he made about future threats, yes. But even threats alone, this court has. Even threats alone. If you have beatings plus a threat to kill him or the family, that's future persecution, isn't it? Well, on the sliding scale, outside of even GU, if you looked at, for example, the Lonza case from 2004, and that's at 389 F3rd 917. In that case, the individual was blacklisted, punched, pushed, and threatened, and that was found to not. To do what? I'm sorry? Threatened with what? With severe harm or life. I'm not sure that the case specified, and I didn't write down if it did. But it was threatened with acts that would arguably constitute persecution. But the threats and the blacklisted and the punching and the pushing, in that case, this court found to not constitute persecution. I think you'd find that threats of murder, of killing of the person or the person and the family would be sufficient when combined. The problem, I think, is you may find the whole story not plausible. That was not the basis of the BIA's action. You might find other problems with the story, but as you know, we're limited to the reasons the BIA gave. I think there may well be reason to question the story, but we, too, are limited to the reasons the BIA gave. I must say that the discrepancy in the time that he said this occurred, it occurred over a three-day period. And whether he said three and then he immediately changed to two, it's hard to see that as a lack of credibility. The second reason is the absence of the name of the Israeli official. But as you know, we've got a number of cases that say you don't expect the full details in the initial one. And in the interview, he says that he gave the name specifically, and there's no refutation of that. And you can say, well, it's not credible that he did it, but you can't say, you can't rely on that to say it's not credible. So, you know, if somebody had come in and testified that he'd know he didn't do that in the interview, or if there were a recording of the interview that were introduced, but there's no way to say that the absence of the name isn't credible when there's unrefuted testimony that he said it in the interview. So that's the problem I have with credibility. I fully understand that. I'd like to address both of them separately. With regards to the how long, the inconsistency about how long he was detained, I acknowledge that, yes, he changed his testimony immediately. And he said, and it's on page 156 of the record at the bottom. And he said, and the first question was, how long were you kept there? And he responded, almost two days, almost three days. And the immigration judge tried to clarify whether it was two or three. And he said, almost three. And then his attorney tried to clarify again. And he then said, well, it was the 13th, and then I brought this back on the 15th. So it sounds like it was just two days and maybe one night. And so I understand that that could be him trying to explain. But under the Real ID Act, an inconsistency is an inconsistency. And that, on the face of it, is an inconsistency. And there's no record evidence that compels a contrary reading of those statements. Three days, over a three-day period, starting the first day. And there were two nights. And then he was released on the third day. The end of his testimony on page 157 says it looks like two nights and one day. Yeah, that's true. But he wasn't released at night, was he? He was released at night. He was arrested at night and released at night? That's what he had testified at one point, that he was returned or his mother said that he returned in the middle of the night. But even that one aside, I would like to quickly address I see that I only have two minutes left. I would like to quickly address the omission in the affidavit because it's not simply that he left out the name of the individual. On page 819 of the record, which is the paragraph where he talks about what happened in his affidavit, it talks about the During the incident, I heard names of people who I believed were all behind all of this. I realized that those people were dangerous and serious because they kept my original complaint. And now he's talking about the individuals who were holding him hostage, not about high-powered business people. He was afraid of the people that were holding him hostage because they had his police complaint, which is a legitimate fear, but it doesn't connect those individuals to these high-powered political figures that he's claiming to fear. And so the omission is that it's a different fear. His fear in this affidavit is from the people who are holding him hostage, not the high-powered political individuals. And so that's the omission. It's not just leaving out a simple name. It's a lot more distinct than that. It is clear for the record that he stated at the hearing before the IJ that he mentioned Mr. Lieberman in his interview with the asylum officer, and no one disputed that. Is that correct? Yeah, there's no evidence in the record as to what happened before the asylum officer. There's evidence to the contrary of his statement. Correct. Correct. And so either the ultimate problem in this case is that the hurdles are multiple, and not only does Petitioner have to show that the adverse credibility is erroneous, but also that the past persecution is erroneous and that there's this objective evidence in the record that shows that he has suffered past persecution. And the record just does not compel that conclusion in this case, Your Honors. Thank you. I'll be very quick. Indeed, the attorney for the government at the trial level had detailed notes, as is customary, an assessment by asylum officer that described the interview. So Ms. Smith, the attorney for the government at that point, never said that Lieberman's name was never mentioned. So I would assume that he did testify during the asylum interview about Lieberman's involvement, and that's why it was never rebutted or questioned during the trial. But the important thing is, as Judge Reinhart pointed to, if there was past persecution, then there is a presumption, rebuttable presumption, and State Department reports in itself cannot rebut that presumption because they're not individualized enough to rebut such presumption. Here, agency found no past persecution and then added to it that, by the way, there is no future because the country condition reports do not show that there is a reasonable fear. So I would argue that he did face past persecution, and once we have a past persecution, then presumption arises that there is a future, which was not rebutted by the country condition reports. Also, if you notice at the Department Office of Immigration Litigation's brief, they argued negative credibility at the end as a backup. It looks like, again, it's my opinion, the Attorney General does not believe that negative credibility is supported by substantial evidence, but rather everybody is concentrating on a past persecution. Thank you. Thank you very much. Thank you. Thank you. Do I have the pleasure of being here for two in a row? Did you come from Washington? Well, at least we made your trip worthwhile. Thank you. All right. The next case for argument I assume is Rodriguez-Tovar v. Lynch.
judges: D.W. Nelson, Reinhardt, Steeh